## M. S. ROBINSON v. STATE.

No. A-5709.   Opinion Filed April 9, 1927.
(254 Pac. 986.)

Morris & Tant, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DOYLE, P. J. The information in this case jointly charged M. S. Robinson and James Robinson with "the possession of about 100 gallons of mash, fit for distillation, into intoxicating liquor, commonly called corn whisky." On the trial the jury returned a verdict of acquittal as to the defendant James Robinson and returned a verdict finding the defendant M. S. Robinson guilty and fixing his punishment at a fine of $100 and imprisonment in the county jail for 30 days.

In support of the contention of counsel that the judgment should be reversed a number of errors are assigned and argued. To properly determine the questions thus presented consideration of the evidence will be necessary.

The testimony of T. C. Shacklett, sheriff, and A. W. Culp, deputy, shows that in executing a search warrant they visited the premises of the defendant, three miles south of El Reno, and searched the same. They

found concealed in a straw stack near the defendant's barn several barrels of mash, and over on the railroad right of way two barrels of mash, and across the right of way in a pasture they found a cooker. The sheriff testified that the mash was fit for distillation.

The affidavit and search warrant were introduced in evidence. The insufficiency of the affidavit upon which the search warrant issued, made on information and belief alone, and the invalidity of the search warrant, is confessed by the county attorney, and the court so held. The state rested and the defendants moved for directed verdicts in the form of a demurrer to the evidence, which was overruled.

At a witness in his own behalf, M. S. Robinson testified that he had lived in and around El Reno for the past 23 years, following his trade of paper hanger and painter; that he inherited from his father the east 80 that has the house and barn on it, and has lived there with his son James, codefendant, since last August; that his brother was living there when they threshed the straw, and the straw stack was 160 yards from the barn, and the barn is 150 yards from the house. He denied any knowledge of the mash, and stated that he did not give any person permission to put it on his place; that he did not own or control the west 80.

James Robinson testified that his age was 19 years; that he and his father lived alone on the place; that he was there when the officers came; that he did not know anything about the mash found in the straw stack or on the railroad right of way; that the straw stack was about a quarter from the road.

Several witnesses, including the postmaster of El Reno, qualified as character witnesses, and each testified that he had known the defendant for at least 10

years, and that his reputation as to being a law-abiding citizen was good.

Mrs. A. J. McLaren, in rebuttal, testified:

"I live with my husband in El Reno. During the month of December, we drove three miles south of here to a yellow house with cedar trees around it; we drove into the front yard and stopped."

Over the defendant's objection she further testified:

"This boy, 'James Robinson,' came out to the car. My husband went around back with him, and stayed about 15 minutes, when they came back, and my husband had a quart of whisky, and I saw some change in his hand.

"Comes now the defendant M. S. Robinson and moves the court to strike all the testimony of this witness with reference to the transaction testified to and instruct the jury to disregard it as to defendant M. S. Robinson; the same being incompetent, irrelevant, prejudicial and not proper rebuttal.

"The Court: Overruled."

She further testified—

"It was along about the 1st of December. I know the boy and I know the place. On Christmas Eve my husband went back and got some more.

"The Court: Objection sustained. The jury will disregard any other transaction other than one witness first stated."

It is contended that the testimony of Mrs. McLaren was not admissible for any purpose, for the reason that it tended to show other and different offenses than that charged in the information.

This prosecution was under section 1, c, 1, p. 1, Sess. Laws 1923, which declares:

"No mash, wort, or wash fit for distillation or for the manufacture of beer, wine, distilled spirits or other

alcoholic liquor shall be made, fermented or possessed by any person," etc.

Section 6 of said act provides:

"Any mash, wort, or wash, and any distillery found in any house, or building, or within any inclosure shall prima facie be deemed, in the case of mash, wort or wash, to have been made and fermented by, and in the case of a distillery to have been set up by, and to be the property of the person or persons who are in actual possession and control of the house, building or inclosure as the case may be; provided, further, that it shall be unlawful for any person to place any mash, wort, or wash, or any distillery or still on the premises of another."

To justify or sustain a conviction under section 1, it is only necessary for the state to prove possession as charged in the information, and the evidence should have been confined to this inquiry. It is unnecessary to prove criminal intent. The general rule is that, when a defendant is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383. Evidence of an offense other than the one charged is admissible only when it tends to prove the offense charged. To be competent and admissible, it must have some logical connection with the offense charged. Koontz v. State, 10 Okla. Cr. 553, 139 P. 843, Ann. Cas. 1916A, 689. Where a defendant is on trial for a specific offense, evidence of unrelated offenses is not admissible, unless relevant to the issue and tending to show motive or intent. Proctor v. State, 8 Okla. Cr. 537, 129 P. 77.

The state's evidence in rebuttal was not pertinent to any issue and had no connection with the offense charged and was calculated to prejudice the jury

against this defendant. The record further shows that the court refused to admonish the jury that this testimony was not admissible against this defendant.

For the error of the court in permitting irrelevant testimony, prejudicial to the defendant's rights and interest, the judgment of the lower court is reversed.

EDWARDS and DAVENPORT, JJ., concur.